# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| COLUMBIA HOSPITAL AT MEDICAL CITY OF DALLAS SUBSIDIARY, L.P. d/b/a MEDICAL CITY DALLAS and COLUMBIA MEDICAL CENTER OF PLANO SUBSIDIARY, L.P. d/b/a MEDICAL CITY PLANO, | § | |
| *Plaintiffs*, | § | Civil Action No. 4:24-cv-924<br>Judge Mazzant |
| v. | § | |
| CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA and KEENAN & ASSOCIATES, INC., | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Keenan & Associates, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. #38) and Defendant California Physicians' Service d/b/a Blue Shield of California's Motion to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum in Support (Dkt. #54). Having considered the Motions and the relevant pleadings, the Court finds that the Motions should be **GRANTED**.

## BACKGROUND

Plaintiff Columbia Hospital at Medical City of Dallas Subsidiary, L.P. d/b/a Medical City Dallas and Plaintiff Columbia Medical Center of Plano Subsidiary, L.P. d/b/a Medical City Plano (together, "Plaintiffs") are acute care hospitals that treat patients in the Plano and Dallas metropolitan communities (Dkt. #36 at p. 5). Defendant California Physicians' Service d/b/a Blue Shield of California ("Blue Shield California") and Defendant Kenan & Associates ("Keenan")

allegedly failed to pay for medically necessary services that Plaintiffs provided to two patients who were subscribers to a Blue Shield California health plan (Dkt. #36 at p. 6). Keenan allegedly administered one of the two health plans (Dkt. #36 at p. 19).

As a result of Defendants' alleged failure to pay, Plaintiffs filed suit, asserting three causes of action. Count One against Defendants is the failure to comply with a health benefit plan in violation of ERISA[1] (Dkt. #36 at p. 19). Count Two is a breach of contract claim against Blue Shield California only (Dkt. #36 at p. 21). And Count Three against Defendants is a breach of contract claim asserted in the alternative (for any plans not subject to ERISA) (Dkt. #36 at pp. 24–25).

This opinion addresses the second round of motions to dismiss in the case. After the first round, the Court held that Plaintiffs failed to establish the Court's subject matter jurisdiction, and gave Plaintiffs leave to amend their complaint (Dkt. #35). They did so, and Defendants moved to dismiss once more (Dkt. #36; Dkt. #38; Dkt. #54). Defendants argue that subject matter jurisdiction remains lacking and assert a myriad of other grounds for dismissal.

Both motions to dismiss are fully briefed (Dkt. #38; Dkt. #51; Dkt. #54; Dkt. #58; Dkt. #61), and ripe for adjudication.

## LEGAL STANDARD

### I. Dismissal for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court does not have statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court

[1] ERISA is the Employee Retirement Income Security Program of 1974, codified at 29 U.S.C. § 1001, *et seq*.

will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

## II. Dismissal for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that in personam jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990). To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint

are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists." *Quintana*, 259 F. Supp. 2d at 557 (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish personal jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 585 (5th Cir. 2014).

Courts conduct a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, courts must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, courts determine whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Continuous and systematic contacts with a forum is a difficult standard to meet, requiring extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.

Specific jurisdiction is proper when the plaintiff alleges a cause of action "arising out of or related to the defendant's contacts with the forum [state]." *Helicopteros*, 466 U.S. at 414 n.8. For a court to exercise specific jurisdiction, the court must determine:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)), *abrogated on other grounds by Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017).

Defendants who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated" or of the "unilateral activity of another party or a third person." *Id.* at 475 (citation modified).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018). "[I]t is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

## ANALYSIS

### I. Whether Plaintiffs have Standing to Pursue Count One

Defendants argue that Plaintiffs lack standing to bring suit under ERISA. "Standing is jurisdictional." *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002). ERISA does not supply medical providers like Plaintiffs standing to bring suit, so their "standing to bring this lawsuit must be derived from the beneficiary and it is subject to any restrictions contained in the plan." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019). If a "valid and enforceable anti-assignment clause" deprives Plaintiffs of standing, then the Court "lack[s] jurisdiction to hear the case." *Id.*

According to Defendants, valid and enforceable anti-assignment clauses deprive the Court of jurisdiction here. Plaintiffs respond that Defendants waived (or are estopped) from asserting the anti-assignment clauses. Specifically, Plaintiffs argue that they have "pled sufficient facts" to establish waiver, and that the anti-assignment clauses improperly attack the merits of Plaintiffs' claims at the pleading stage (Dkt. #58 at pp. 14, 15). The Court must first examine whether Plaintiffs correctly frame this matter as one of sufficiency of pleading.

The issue boils down to whether Defendants challenge prudential standing or jurisdictional standing. *See Piney Woods ER III, LLC v. Blue Cross & Blue Shield of Tex.*, No. 5:20-CV-00041-RWS, 2022 WL 4004790, at *4 (E.D. Tex. Mar. 17, 2022) (analyzing whether challenge to assignment of contractual rights was a question of subject matter jurisdiction or the merits of the case). If Defendants' challenge attacks the merits of the claim, the Court assumes the facts pleaded in the operative complaint are true. *Id.* If Defendants attack subject matter jurisdiction, however, the Court must consider whether the attack is facial or factual. *See Evans v. Tubbe*, 657 F.2d 661, 663

(5th Cir. 1981). A facial attack focuses on the sufficiency of the plaintiff's complaint, while a factual attack challenges jurisdiction in fact, irrespective of the pleadings. *Id.* No presumptive truthfulness attaches to the plaintiff's jurisdictional allegations when facing a factual attack. *Id.*

The Court concludes that, by attaching the relevant plans and invoking anti-assignment language in each of them, Defendants launch a factual attack on subject matter jurisdiction. In *Dialysis Newco*, the Fifth Circuit held that "[i]f the provider lacks standing to bring the lawsuit [under ERISA] due to a valid and enforceable anti-assignment clause, then federal courts lack jurisdiction to hear the case." *Dialysis Newco*, 938 F.3d at 250. Furthermore, in *Cell Science Systems Corp. v. Louisiana Health Service*, 804 F. App'x 260, 263–64 (5th Cir. 2020) (per curiam) (unpublished), an ERISA case, the Fifth Circuit held that an anti-assignment clause challenges subject matter jurisdiction in fact and does not "merely challeng[e] the allegations on their face."

In that case, the Fifth Circuit specifically rejected the argument that the district court should have analyzed the assignment clause under prudential standing instead of Article III standing. *Id.* at 263. Although *Cell Science* is unpublished, the Fifth Circuit interpreted *Dialysis Newco*, which is published, to establish that an anti-assignment issue is jurisdictional in the ERISA context. *Id.* (citing *Dialysis Newco*, 938 F.3d at 250). The *Cell Science* court saw "no reason to revisit [its] precedent regarding standing under ERISA," and proceeded to conclude that the anti-assignment clause issue constituted a factual jurisdictional attack. *Id.* at 263–64.[2]

[2] The Court acknowledges that some courts have treated assignment validity in the ERISA context as a prudential standing issue analyzed under Rule 12(b)(6). *See, e.g.*, *Piney Woods*, 2022 WL 4004790, at *4. Judge Ramirez carefully analyzed this issue and concluded that, despite the fact that statutory or prudential standing is usually analyzed under Rule 12(b)(6), Fifth Circuit precedent makes ERISA standing subject to challenge under Rule 12(b)(1). *MedARC, LLC v. Meritain Health, Inc.*, No. 3:20-CV-3281-N-BH, 2021 WL 5762810, at *6 n.8 (N.D. Tex. Nov. 12, 2021) (citing *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016)), *report and recommendation adopted*, 2021 WL 5760571 (N.D. Tex. Dec. 3, 2021). This Court agrees.

The Court is persuaded that the validity of the assignments is a factual attack on subject matter jurisdiction. Thus, there is no presumptive truthfulness to the allegations in the complaint. *Evans*, 657 F.2d at 663. To establish subject matter jurisdiction, then, Plaintiffs were "required to submit facts through some evidentiary method" to establish "by a preponderance of the evidence" that the Court has subject matter jurisdiction. *Cell Science*, 804 F. App'x at 264.

Having determined the applicable standard, the Court now turns to the next issue: whether Plaintiffs satisfy the applicable standard in this case. Here, Plaintiffs introduced no evidence supporting their theory of waiver or estoppel and instead rely on allegations in the complaint (Dkt. #58 at p. 18; Dkt. #51 at p. 25). Because no presumption of truthfulness attaches to the allegations in the complaint in this context, *Evans*, 657 F.2d at 663, Plaintiffs have not established subject matter jurisdiction by a preponderance of the evidence. *Cell Science*, 804 F. App'x at 265; *Bay Area Healthcare Grp., Ltd. v. Cal. Physicians' Serv.*, No. 2:25-CV-00021, 2025 WL 4089350, at *9 (S.D. Tex. Sept. 26, 2025) ("Bay Area fails to establish ERISA standing because it has failed to present evidence to support a finding that . . . CPS waived the anti-assignment provision."), *report and recommendation adopted*, No. 2:25-CV-00021, 2026 WL 257572 (S.D. Tex. Jan. 30, 2026).

The Fifth Circuit cases that Plaintiffs cite in support of their estoppel theory are distinguishable. Plaintiffs principally rely on *Hermann Hospital v. MEBA Medical & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012).[3] In *Hermann*, the defendant never denied

[3] *Hermann* relied on estoppel to prevent enforcement of an anti-assignment clause, *Hermann*, 959 F.2d at 574, so although Plaintiffs refer both to waiver and estoppel, the Court will refer to Plaintiffs' theory as one of estoppel. For clarity, it is worth noting that *Hermann* estoppel is distinct from "ERISA estoppel," a more demanding theory Plaintiffs do not raise here. *Angelina Emergency Med. Assocs. PA v. Blue Cross & Blue Shield of Ala.*, 156 F.4th 505, 519 (5th Cir. 2025) ("*Hermann* and ERISA estoppel lay out two distinct types of estoppel."), *cert. denied sub nom. Blue Cross & Blue Shield v. Angelina Emergency Med.*, No. 25-1020, 2026 WL 1513316 (U.S. June 1, 2026).

coverage outright, and, instead, it kept "postponing payment, asserting that it was 'investigating' the claim" and "lie[d] behind the log for three years without once asserting the anti-assignment clause, of which [the plaintiff] had no knowledge, while duplicitously dragging out the ongoing negotiations to liquidate the claim." *Id.* at 573, 574. But here, Defendants denied the claims outright within two months of the claims being submitted (Dkt. #36 at pp. 12–13, 15–16). Thus, the record does not support a finding that Defendants engaged in duplicitous conduct creating the protracted process the Fifth Circuit faced in *Hermann*.

Plaintiffs also rely on *Angelina*, 156 F.4th at 520, where the Fifth Circuit held that the fact that the defendants made partial payment on the claims and refused to provide the plan documents upon request could help support a finding of estoppel. Here, there was no partial payment because the claims were denied outright. Furthermore, the briefing before the district court in *Angelina* demonstrates that the plaintiffs introduced evidence regarding their course of dealing with the defendants. *See, e.g.*, Civil Docket for Case Number 3:18-cv-425 (N.D. Tex. 2023), Dkt. #443-7 at p. 205 (exhibit showing request for documents), Dkt. #443-3 at p. 5 (declaration explaining that the plaintiffs repeatedly asked for plan documents to no avail). In this case, Plaintiffs do not submit any such evidence. Thus, the Court does not find it more likely than not that Defendants engaged in the duplicitous conduct akin to that in *Hermann*. Additionally, unlike "the plan in [*Hermann*], here, [Defendants] did not invoke the anti-assignment clause to deny the claim; [they] invoked the anti-assignment claim only as a challenge to jurisdiction." *Cell Science*, 804 F. App'x at 265. The Court will therefore dismiss Count One, Plaintiffs' ERISA claim, without prejudice.

The question now becomes how to handle Plaintiffs' alternative request to amend the complaint once more, with leave to conduct limited discovery. The Court has no reason to believe

that lack of discovery prevented Plaintiffs from establishing subject matter jurisdiction. If Defendants engaged in "duplicitous[]" conduct that "dragg[ed] out the ongoing negotiations," as contemplated in *Hermann*, Plaintiffs would have at least some of the evidence necessary to show this. Plaintiffs, for example, could have attached evidence showing the repeated requests for documents that Defendants allegedly refused. Furthermore, in its prior order addressing subject matter jurisdiction, the Court held that Defendants' attack on the existence of valid assignments was a factual jurisdictional attack (Dkt. #35 at pp. 4, 5). Thus, Plaintiffs were on notice of the Court's view that pleadings alone would not suffice (*See* Dkt. #35 at p. 5 (explaining that Plaintiffs must put forth evidence of "valid and enforceable assignments" to survive dismissal for lack of subject matter jurisdiction)). Since then, Plaintiffs have provided evidence of the assignments, but no evidence showing that the assignments are valid and enforceable.

Because Plaintiffs already had an opportunity to amend their complaint to establish subject matter jurisdiction by a preponderance of the evidence, and the Court is not persuaded that Plaintiffs needed discovery to establish subject matter jurisdiction, Count One will be dismissed without prejudice and without leave to amend.[4]

[4] In passing, Plaintiffs make other arguments against enforcement of the anti-assignment clauses, which the Court will address here. First, Plaintiffs argue that the anti-assignment provisions in the plans do not prohibit the assignment of the right to sue. This is incorrect. One of the plans expressly mentions the right to sue as an example of the prohibited assignments (Dkt. #54-2 at p. 94). The other plan contains language that the Fifth Circuit has held prohibits the assignment of the right to sue (*Compare* Dkt. #54-2 at p. 47 (providing that plan "Benefits . . . may not be assigned without" written consent, and that payment to providers "does not create a third party-beneficiary or other legal relationship"), *with LeTourneau*, 298 F.3d at 349 (holding that providers lacked derivative standing when anti-assignment clause stated that "Medical coverage benefits of this Plan may not be assigned, transferred or in any way made over to another party by a participant" and that "Nothing contained in the written description of Wal–Mart medical coverage shall be construed to make the Plan or Wal–Mart Stores, Inc., liable to any third-party")). The Court therefore finds that the plans' text unambiguously prohibits assignment of the right to sue. Second, Plaintiffs make a boilerplate objection that the plans are not authenticated, without explaining why the attached affidavit purporting to authenticate the plans is deficient. After considering the affidavit, the Court overrules this objection as insufficiently briefed. *See also Bay Area Healthcare*, 2025 WL 4089350, at *6 (considering health plan attested to by affidavit when ruling on factual challenge to subject matter jurisdiction).

Defendants do not challenge subject matter jurisdiction over the remaining counts, and the Court finds it has diversity jurisdiction over the remaining counts. The Court therefore proceeds to analyze personal jurisdiction.

## II. Whether the Court has Personal Jurisdiction over Defendants

The Court must now determine whether Defendants are subject to personal jurisdiction in Texas. Plaintiffs, in their responses to the two motions to dismiss, rely heavily on pendent personal jurisdiction arising from the ERISA claim (Dkt. #51 at pp. 14–16; Dkt. #58 at pp. 23–25). In response to Keenan's motion to dismiss, Plaintiffs exclusively rely on pendent personal jurisdiction without making any other argument for personal jurisdiction. However, the Court will dismiss the ERISA claim without leave to amend, *see supra* I, and therefore cannot exercise pendent personal jurisdiction arising from that claim. Thus, the Court must evaluate whether personal jurisdiction exists without pendent personal jurisdiction.

### A. General Personal Jurisdiction

Both Blue Shield California and Keenan are corporations incorporated under California law, with their principal place of business in California (Dkt. #36 at pp. 2, 3). Neither maintains a regular place of business in Texas and neither has a designated agent for service of process in Texas (Dkt. #36 at pp. 2, 3).

Defendants argue that they are not essentially at home in Texas. Plaintiffs do not distinguish their arguments about general and specific jurisdiction but seem to argue that the Court has general jurisdiction because "Defendants conduct substantial business in Texas, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here" (Dkt. #36 at p. 3).

These allegations do not establish the exceptional circumstances required to deem an out-of-state defendant essentially at home in Texas. *See Daimler AG*, 571 U.S. 139 n.19 (explaining that only an "exceptional case" may warrant exercising general jurisdiction over a corporation not domiciled in the forum state); *C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. PE:18-CV-00039-DC-DF, 2020 WL 3579202, at *4 (W.D. Tex. Feb. 21, 2020) ("In the wake of the Supreme Court's decision in *Daimler AG v. Bauman*, it has become 'virtually impossible' to find general jurisdiction outside of the state where a defendant is domiciled absent some exceptional circumstances."), *report and recommendation adopted*, No. PE:18-CV-39-DC, 2020 WL 3579825 (W.D. Tex. Mar. 9, 2020). Thus, the Court lacks general personal jurisdiction over Defendants.

**B. Specific Personal Jurisdiction**

The more pressing issue is specific jurisdiction, at least as to Blue Shield California. As to Keenan, Plaintiffs' only argument is that pendent personal jurisdiction exists based on the ERISA claim (Dkt. #51 at pp. 15–16). However, the ERISA claim does not survive dismissal, so it cannot anchor the Court's personal jurisdiction over Keenan. The Court must therefore consider whether it can exercise specific personal jurisdiction based on Plaintiffs' state claims against Defendants.

**1. Specific Personal Jurisdiction over Keenan**

The Court lacks specific jurisdiction over Keenan. Plaintiffs' complaint alleges that Keenan does business in Texas, and that Keenan administered a claim based on services Keenan authorized in Texas (Dkt. #36 at p. 3). The Fifth Circuit has held that an out-of-state defendant's "mere approval of treatment in Texas" did not establish personal jurisdiction. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 371 (5th Cir. 2010). Plaintiffs do not address *Choice Healthcare* or offer any argument that Keenan is subject to personal jurisdiction in the absence of

pendent personal jurisdiction (Dkt. #51 at pp. 14–15). Under these circumstances, the Court finds that it lacks specific personal jurisdiction over Keenan.

At the end of their response to Keenan's motion, Plaintiffs insert a request to amend their complaint to cure "any perceived deficiencies," and to conduct limited discovery on "any deficiencies" (Dkt. #51 at p. 33). A court need not grant a motion for leave to amend where the movant fails to specify what amendment is desired and how it would cure its pleading defects. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Plaintiffs did not specify the desired amendment or how it would cure its pleading defects. Moreover, Plaintiffs do not argue that specific personal jurisdiction exists as to Keenan without pendent personal jurisdiction. Given this context, the Court is not persuaded that it should allow a third amended complaint against Keenan. The Court will therefore dismiss the remaining state law claim against Keenan (Count Three) without prejudice and without leave to amend.

### 2. Specific Personal Jurisdiction over Blue Shield California

The Court lacks specific personal jurisdiction over Blue Shield California. Plaintiffs claim they are not relying purely on Blue Shield California's participation in the BlueCard program to establish personal jurisdiction. But they offer little else. Plaintiffs argue that:

> Plaintiffs have . . . pled sufficient facts to establish personal jurisdiction over [Blue Shield California] for purposes of its state law claims and is not solely basing jurisdiction on [its] participation in the BlueCard system. Namely, [Blue Shield California] is an affiliate of the [Blue Cross Blue Shield Association] as defined in the Agreements. The Agreements specifically allow affiliates of [Blue Cross Blue Shield Association] access to the benefits of the Agreements (namely in network reimbursement rates) provided the affiliates complies with all terms and provisions of the Agreements. As such, by accessing the benefits of the Agreements, [Blue Shield California] agreed to comply with its terms, including the requirement that the Agreements be governed by Texas law. Further, upon information and belief, both of the [Blue Shield California]-Subscribers [the patients] at issue in this matter reside in the State of Texas. Both Subscribers received medical services in the State of Texas. As such, [Blue Shield California] issued these policies to Texas residents

> knowing of the possibility of having to resolve disputes under the Agreements based on Texas law.

(Dkt. #58 at p. 24 (internal citations omitted)).

These allegations, taken as true, do not establish Blue Shield California's minimum contacts with Texas. The jurisdictional allegations here partially resemble those in *St. Luke's Episcopal Hosp. v. Louisiana Health Service & Indemnity Co.*, No. CIV.A. H-08-1870, 2009 WL 47125, at *8 (S.D. Tex. Jan. 6, 2009). In that case, the plaintiff provider alleged that:

> [T]he defendant out-of-state insurer had entered into an agreement with a national association that allowed the insurer to obtain discounted rates under forum-state contracts between forum-state insurers and medical-services providers; that the claim processing was handled in the forum state by a forum-state insurer acting under the national association agreement to provide such services to the defendant out of-state insurer; and that this defendant received the benefit of discounted rates under an agreement between the forum-state insurer and the forum-state medical-services provider.

*Id.*

The district court in *St. Luke's* deferred its ruling on personal jurisdiction to see if the plaintiff could amend the complaint to assert an ERISA claim. *Id.* However, the Fifth Circuit examined *St. Luke's* in *Choice Healthcare* and concluded that the facts alleged in *St. Luke's* would not establish purposeful availment. *Choice Healthcare*, 615 F.3d at 371–72. The Fifth Circuit held that membership in a national preferred provider network that contracts with medical providers "is not enough to show that [a] defendant purposefully availed itself of the benefits and privileges of the forum state [where the providers are located]." *Id.*

Plaintiffs' response does not address *Choice Healthcare* or *St. Luke's*. The Court construes the response to argue that these cases are distinguishable. In the Court's view, they are not different enough to warrant a different result. Although plaintiffs allege that Blue Shield California has access

to benefits as an affiliate of Blue Cross Blue Shield Association, Plaintiffs have not alleged that the benefits that flow from its affiliate status are any different than those ordinarily obtained through the BlueCard program. Thus, the allegations do not show "commercial activity purposefully directed toward [Texas]." *Choice Healthcare*, 615 F.3d at 370.

The allegation that Plaintiffs are Texas residents also fails to show purposeful availment in this case. Plaintiffs point to *In re Blue Cross Blue Shield Antitrust Litigation*, 225 F. Supp. 3d 1269, 1302 (N.D. Ala. 2016), as persuasive authority. In that case, however, the defendants knew the addresses of the applicants living in Alabama when they issued the health plans and agreed to provide health insurance to group plans that included employees who resided in multiple states, including Alabama. *Id.* at 1310. Plaintiffs do not make similar allegations here.

Instead, Plaintiffs allege that the patients who received medical services are Texas residents, while also alleging that Blue Shield California's subscribers "are not confined to the State of California and routinely receive hospital services in other states, including Texas" (Dkt. #36 at p. 3). Allegations about the "independent action of the insureds in traveling to the forum state to seek treatment outside of their coverage area" do not establish the insurer's purposeful availment. *Choice Healthcare*, 615 F.3d at 374. Taking the allegations in the complaint as true, Plaintiffs do not sufficiently distinguish this case from *Choice Healthcare*. They do not allege when the patients became Texas residents or explain how their residence shows Blue Shield California's deliberate contact with Texas.[5]

[5] To be clear, the Court does not hold that alleging the timing of when the patients became Texas residents would, by itself, establish personal jurisdiction. *See Choice Healthcare*, 615 F.3d at 370–71 ("This court has also refused to assert personal jurisdiction over a non-resident insurer even though the insurer is aware that its insureds were seeking treatment in the forum state."). But the Court need not rule on the issue under the facts alleged.

Plaintiffs also rely on *St. David's Healthcare Partnership, L.P. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 1-23-CV-00591-ADA, 2023 U.S. Dist. LEXIS 242130, at *14 (W.D. Tex. Dec. 27, 2023). There, the court held that it could exercise specific personal jurisdiction over an out-of-state insurer because it "access[ed] the benefits of the [agreement between the plaintiff and Blue Cros Blue Shield of Texas]" and "administer[ed] health plans to Texas residents." *Id.*

*St. David's* did not discuss *Choice Healthcare* or *St. Luke's*. This Court is persuaded that those cases counsel against a finding of personal jurisdiction. In *Choice Healthcare*, the purported contacts were "the payments [the defendant health plan] made to [the providers] over the course of three years," and the defendant's contract with a preferred provider organization "which allowed [the defendant] to receive discounted coverage from participating health care providers." *Choice Healthcare*, 615 F.3d at 369. These facts did not establish minimum contacts. *Id.* at 372. As currently alleged, Plaintiffs' jurisdictional facts are not sufficiently distinguishable, as the alleged benefits resemble those that arise from participation in the BlueCard program. The Court will therefore dismiss the remaining claims against Blue Shield California without prejudice for lack of personal jurisdiction.

Having determined it lacks personal jurisdiction over Blue Shield California, the Court now turns to Plaintiffs' alternative requests. First, Plaintiffs ask to "conduct limited discovery on [Blue Shield California]'s contacts with the state of Texas and an evidentiary hearing prior to any ruling as to . . . personal jurisdiction" (Dkt. #58 at p. 25). Second, "almost as an afterthought," Plaintiffs "tacked on a general curative amendment request to the end of their response in opposition to the . . . motion to dismiss." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).

These requests are denied. This case has been pending for almost two years, and Plaintiffs have faced two different sets of motions to dismiss challenging personal jurisdiction. Despite this, Plaintiffs have not formally moved for a hearing, limited jurisdictional discovery, or to amend the complaint. As to the informal request to amend, Plaintiffs did not include a proposed amended complaint, and they did not put the Court on notice about "the substance of their proposed amendment." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002); *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan*, No. CV H-17-2364, 2017 WL 6561165, at *12 (S.D. Tex. Dec. 22, 2017) (denying leave to amend when the plaintiff failed to file "a formal motion to amend" or "submit[] a proposed amended complaint."). The informal request for jurisdictional discovery fares no better because Plaintiffs "failed to describe what, if any, material facts it reasonably expects limited discovery to reveal." *Pennwell*, 2017 WL 6561165, at *12; *Adams v. Anderson*, No. CV 24-2432, 2025 WL 2211942, at *4 (E.D. La. Aug. 4, 2025) (denying request for jurisdictional discovery when the request was not specific). The Court's decision to deny jurisdictional discovery limits the utility of an evidentiary hearing and Plaintiffs do not explain what the hearing could accomplish. Each request is therefore denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant Keenan & Associates, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. #38) and Defendant California Physicians' Service d/b/a Blue Shield of California's Motion to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum in Support (Dkt. #54) are hereby **GRANTED**.

It is further **ORDERED** that all claims against all defendants in this case are **DISMISSED without prejudice** and **without leave to amend**.

The Court will issue a separate final judgment dismissing all claims without prejudice.

**IT IS SO ORDERED.**

**SIGNED this 14th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE